IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CARLTON T. BOYLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-CV-545 |
| | ) | |
| LANGMORE CAPITAL, LLC and | ) | |
| EQUITY TRUST COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Catherine C. Eagles, District Judge.

Carlton Boyles filed this action in state court against Langmore Capital, LLC, and Equity Trust Company, asserting a state law claim for unfair trade practices based on alleged conversion of funds belonging to him. The defendants removed the case to this court and now move to compel arbitration. Because there is a disputed question of material fact as to whether Mr. Boyles signed the arbitration agreements, a summary trial on this limited issue will be necessary before the motion can be resolved.

**BACKGROUND**

While not completely clear from the complaint, Mr. Boyles appears to allege that he and Langmore had a business relationship; that Langmore overcharged Mr. Boyles; that over Mr. Boyles' objection, Equity delivered funds it held for Mr. Boyles to Langmore to satisfy the unjustified overcharge; and that Langmore has refused to return the money. *See generally* Doc. 4. From the defendants' submissions, it appears that they

will contend that Mr. Boyles had a self-directed IRA with Equity, *see* Doc. 9-3 ¶ 3, and he invested some of the IRA funds in coins sold by Langmore. *Id*. at ¶ 4; Doc. 9-6.

Langmore moves to compel arbitration based on a written agreement denominated as a "Shipping and Transaction Agreement," Doc. 9-9 at 1, which contains an arbitration provision. Doc. 9-9 ¶ 13. Langmore has provided evidence that Mr. Boyles signed the agreement electronically. Doc. 9-7 ¶ 3; *see* Doc. 9-9 at 11. In the verified complaint and in an affidavit, Mr. Boyles denies seeing or signing this agreement. Doc. 4 ¶ 5; Doc. 11-4 p. 1, ¶ 2.[1]

Similarly, Equity move to compel arbitration based on a written agreement signed when Mr. Boyles opened an account with Equity. *See* Docs. 9-4; 9-5 at 13 (Article XVIII). Equity has provided evidence that when Mr. Boyles applied to open an IRA account, he electronically signed an application stating that he read the Arbitration Agreement in the IRA Custodial Account Agreement and understood that unless he opted out within 65 days of opening his account, he agreed to be bound by that Arbitration agreement; Doc. 9-4 at p. 4 ¶ 18; that the Custodial Account Agreement contains an arbitration agreement, Doc. 9-5 at p. 13, Article XVIII; and that Mr. Boyles did not opt out of the arbitration agreement. Doc. 9-2 ¶ 5. In an affidavit, Mr. Boyles denies seeing or signing this agreement. Doc. 11-4 ¶¶ 5–6.[2]

---

[1] Mr. Boyle's affidavit includes multiple paragraphs numbered "2." This cite refers to the statement beginning with, "Plaintiff never signed."

[2] In conflict with his own argument that there is no written agreement with Equity, Mr. Boyles appears to rely on the Custodial Account Agreement to support his contention that Equity

## DISCUSSION

The motion to compel arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, which provides in relevant part that:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* § 2. In order for this provision to apply, four elements must be established: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the ... refusal of [one party] to arbitrate the dispute." *Galloway v. Santander Consumer USA Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)).

Mr. Boyles challenges only one element: the existence of a written agreement to arbitrate. Otherwise, the record is clear and the Court finds that there is a dispute between the parties, the arbitration provisions presented by the defendants purport to cover the dispute, the transactions arise out of interstate commerce, and Mr. Boyles has refused to arbitrate.

---

did not have permission to transfer his funds to Langmore. *See* Doc. 13 at ¶ 13. This is a questionable approach and arguably estops Mr. Boyles from denying he signed the agreement. *See, e.g.*, *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000). "To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying the enactment of the Arbitration Act."). As it has not been addressed in the briefing, the Court will not discuss it further here.

### A. Written Agreement to Arbitrate

It is well-settled that a "party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Levin v. Alms & Assocs., Inc.,* 634 F.3d 260, 266 (4th Cir. 2011). Therefore, "before referring a dispute to an arbitrator, the Court determines whether a valid arbitration agreement exists," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.,* 944 F.3d 225, 234 (4th Cir. 2019) ("Section 4 [of the Federal Arbitration Act] thus requires that the district court – rather than an arbitrator – decide whether the parties have formed an agreement to arbitrate").

Because the issue of whether an arbitration agreement has been formed is an issue of contract law, courts apply the "ordinary state-law principles that govern the formation of contracts" in reviewing a challenge under § 4. *Id*. at 236; *see also Mey v. DirectTV, LLC,* No. 18-1534, slip op. at 19 (4th Cir. Aug. 7, 2020). Mr. Boyles lived in North Carolina when he purportedly executed the agreements on which the defendants rely, *see* Doc. 4 ¶ 1, and it thus appears that North Carolina law governs the formation of the asserted arbitration agreement. *Rowland v. Minnesota Life Ins. Co.*, No. 519CV00069KDBDCK, 2020 WL 534499, at *4 (W.D.N.C. Feb. 3, 2020).

When a party unequivocally denies "that an arbitration agreement exists," and "show[s] sufficient facts in support" of that denial, the court is obliged to conduct a trial under the Trial Provision of Section 4. *Berkeley Cty. Sch. Dist*., 944 F.3d at 234; 9 U.S.C. § 4 (providing that if the "making of the arbitration agreement ... be in issue," then "the court shall proceed summarily to the trial thereof."). To decide whether "sufficient

4

facts" support a party's denial of an agreement to arbitrate, the court can consider the complaint, the supporting materials attached to the complaint, and evidence submitted in support or opposition to the motion to compel arbitration. *See Berkeley Cty. Sch. Dist.*, 944 F.3d at 234; *Galloway*, 819 F.3d at 86 (evaluating materials outside of complaint in assessing motion to compel arbitration). Generally speaking, the same test used at summary judgment applies. *Berkeley Cty. Sch. Dist.*, 944 F.3d at 234.

As the evidence summarized shows, the defendants have presented evidence that Mr. Boyles electronically signed agreements to arbitrate. Mr. Boyles has presented evidence that he never saw the agreements and did not sign them. Thus, the record creates two disputed questions of material fact: 1) Did Mr. Boyles electronically sign the Equity application incorporating the arbitration agreement in the IRA Custodial Account Agreement? and 2) Did Mr. Boyles electronically sign the Shipping and Transaction Agreement with Langmore? To resolve these disputed questions of material fact, a trial is required under Section 4.

### B. Procedure for Trial on Whether There are Agreements to Arbitrate

As the Fourth Circuit recently noted, "the appropriate procedure" to follow when a trial is needed on the question of whether there was an agreement to arbitrate is determined by the trial court in its discretion. *Berkeley Cty. Sch. Dist.*, 944 F.3d at 242. The Court anticipates a trial this year. Because of the substantial scheduling difficulties and health risks resulting from the pandemic, the Court anticipates conducting the trial via a video proceeding. The trial will be limited to the question of whether there were written agreements to arbitrate and should not take longer than a day. The Court did not

see a request for a jury determination of this issue, and subject to correction on that point, the trial will be a bench trial. *See Berkeley Cty. Sch. Dist.,* 944 F.3d at 242 (noting jury trial can be waived and the need to demand a jury trial in the response to the arbitration motion).

The Court directs counsel to otherwise consult about "an appropriate procedure." *Id.* Counsel should discuss whether a brief period of discovery is appropriate; when the parties will be ready for trial on the two questions presented; and, if there is discovery, whether the parties agree to submit the questions on documentary and deposition evidence in lieu of a trial. The parties are free to evaluate, discuss, and suggest other procedures and possibilities.

If the parties agree on the appropriate procedure, they shall file a Joint Submission no later than September 3, 2020. If they do not agree, each side shall on that same date submit a brief directed exclusively to the appropriate procedure for resolving the material factual disputes and limited to 2000 words.

## C. Other Arguments Raised by Mr. Boyle

Mr. Boyles makes several arguments which he fails to support with citation to any case law or, indeed, with any discussion of how the rules cited apply to any relevant facts. While the Court will not attempt a full list of these cursory contentions, they include contentions that:

1) the defendants' motion to compel arbitration is "precluded" and should be stricken because it was not timely made, *see* Doc. 13 at p. 7 ¶¶ 1–3, Doc. 11 at 1;

2) the defendants breached the contracts containing the arbitration clauses and are "barred from asserting rights [in a ] contract they. . . breached," *see* Doc. 13 at p. 7 ¶ 5;

3) the defendants' fraud is a defense to the arbitration agreement, *see* Doc. 13 at p. 8 ¶ 8; and

4) the defendants did not comply with the consumer disclosure provisions in 15 U.S.C. § 7001 applicable to electronic signatures and that as a result there is not valid agreement to arbitrate.[3] *See* Doc. 13 at 11–12.

This kitchen-sink approach does not require discussion or evaluation by the Court. "It is not the court's job to undertake the analysis and legal research needed to support such a perfunctory argument." *Cathey v. Wake Forest Univ. Baptist Med. Ctr.*, 90 F. Supp. 3d 493, 509 (M.D.N.C. 2015); *accord Lab. Corp. of Am. Holdings v. Kearns,* 84 F. Supp. 3d 447, 459–60 (M.D.N.C. 2015) (quoting *Hayes v. Self–Help Credit Union,* No. 1:13–CV–880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014)); *Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1320 n. 3 (Fed. Cir. 2005) (refusing to address an undeveloped argument raised in a footnote); *Hughes v. B/E Aerospace, Inc.,* No. 1:12–cv–717, 2014 WL 906220, at *1 n. 1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do."). These arguments are overruled.

The plaintiff has also filed a paper writing denominated as "Plaintiff's Response to Defendants' Petition to Compel Arbitration," Doc. 11, which contains what purport to be

---

[3] Section 7001(c)(3) appears to be inconsistent with Mr. Boyles' argument.

7

motions for default. These motions will be denied, as they fail to comply with the Local Rules, *see* L.R. 7.3(a) (requiring motions to be set out in a separate pleading and to be accompanied by a brief), and as the plaintiff fails to support those motions with any legal or factual argument.

### D. General Direction to Counsel

The Court is mystified by some of the contentions in the briefs, which appear to be disconnected from the record. For example, plaintiff's counsel asserts that the defendants have not served or produced the arbitration agreements, Doc. 13 ¶¶ 35, 37, but that is inaccurate; those agreements and affidavits authenticating them were electronically filed on the CM-ECF system, which are automatically delivered to counsel of record.[4] The defendants have made a similarly incorrect statement; in the face of an affidavit from Mr. Boyles stating under oath that he did not sign the agreements, Doc. 11-4 p. 2 ¶ 6,[5] they repeatedly contend that Mr. Boyles "has not submitted any evidence that he did not sign the relevant agreements." Doc. 14 at 1, 4.

Whether these kinds of statements were made out of misunderstanding, carelessness, or inattention, whether they were somehow accurate in a hyper-technical

---

[4] If that system for some reason did not work and plaintiffs' counsel did not get the exhibits, plaintiffs' counsel should have checked with the Clerk and examined the docket, rather than assuming the exhibits were not filed. If there was confusion over the citation of exhibits, plaintiff's counsel could have straightened that out easily with a phone call to defense counsel.

[5] The Court appreciates that the affidavit is full of factual statements which cannot possibly be within Mr. Boyles' personal knowledge and overwhelmingly consists of legal argument inappropriate for an affidavit. In the future, counsel for the plaintiff should not submit such patently inadmissible affidavits. But as to whether he did or did not see or sign the agreements at issue, the Court cannot think of any reason he would not be a competent witness.

8

sense but were nonetheless misleading, or whether they were attempts to obfuscate, they will not be tolerated in the future. This is not an invitation to counsel to throw stones at any purported failings of opposing counsel. To the contrary: counsel need to look after their own glass houses.

The Court relies on counsel to be candid with the Court, to provide briefs with developed and focused arguments supported by citation to and application of legal authority that help the Court to make good decisions, and to cooperate with each other to move the dispute to a fair and efficient resolution. Counsel should proceed accordingly.

It is **ORDERED** that the motions for default, Doc. 11, are **DENIED**. The motion to compel arbitration is held open pending further proceedings consistent with this Order, and the parties shall file the submissions authorized herein.

This the 13th day of August, 2020.

_____
UNITED STATES DISTRICT JUDGE

9

Case 1:20-cv-00545-CCE-LPA   Document 15   Filed 08/13/20   Page 9 of 9