UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Case No.: 1:20-CV-O0545-CCE-LPA

CARLTON T. BOYLES,
    Plaintiff,

vs.

LANGMORE CAPITAL, LLC and
EQUITY TRUST COMPANY,
    Defendants.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Case No.: 1:20-CV-O0545-CCE-LPA

CARLTON T. BOYLES,
    Plaintiff,

vs.

LANGMORE CAPITAL, LLC and
EQUITY TRUST COMPANY,
    Defendants.

PLAINTIFF'S ARGUMENT
IN OPPOSITION TO ARBITRATION

---

Plaintiff, Carlton T. Boyles, respectfully submits his written closing argument pursuant to the Order herein dated September 10, 2020, Doc. 17, in order to resolve a disputed question of material fact relevant to the pending motion to compel arbitration, as follows:

## STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT

Carlton Boyles, Plaintiff, filed this action based upon unfair trade practices arising out of conversion of Plaintiff's IRA investment account with Defendants in bullion and coins in the amount of $437,328.77.

Defendants move to compel arbitration, and there is a disputed question of material fact as to whether Mr. Boyles signed arbitration agreements. The Court ordered a summary trial on this limited issue by Memorandum Opinion and Order. Doc. 15.

## STATEMENT OF THE FACTS.

Langmore moves to compel arbitration based on a written document entitled "Shipping and Transaction Agreement", Doc. 9-9 at 1, which document contains an arbitration provision. Doc. 9-9, Paragraph 13. Langmore contends that Mr. Boyles signed the document electronically. Doc 9-7 Paragraph 3; see Doc 9-9 at 11. Mr. Boyles denies seeing, agreeing to, or signing this document or any document associated with this document. Doc. 4 Paragraph 5; Doc 11-4 p. 1, Paragraph 2; Doc. 20, 21, 22, and 23.

1.  Mr. Boyles negotiated with Langmore Capital in an effort to open a Self Directed gold and silver IRA account as set out hereinafter, and did not include arbitration. Doc. 20, 21, 22, and 23.

Mr. Boyles had an IRA savings account of $437,328, and on October 28, 2019, Equity Trust, called Mr. Boyles to discuss an account. Doc. 20, p. 1, Paragraph 1.

On October 29, 2019, Ron Albon of Langmore Capital, Defendant, called Mr. Boyles to discuss transfer of Mr. Boyles' Vangard account to Equity Trust. Mr. Albon requested that Mr. Boyles transfer Mr. Boyles' $437,328 to Equity. Mr. Boyles never received the Langmore Capital's "Shipping and Transaction Agreement.", or "DocuSign "CERTIFICATE OF COMPLETION" [EXHIBIT 1 of Plaintiff's document production (Plaintiff Answer to Interrogatories No. 13); and Defendants' Production # 86. Mr. Boyles never received any document from Equity Trust. There was no mention of any of said documents or of an arbitration agreement, by either Defendant. Doc. 20, pp. 1-2, Paragraph 1

Mr. Boyles never received a copy of the "DocuSign "CERTIFICATE OF COMPLETION".. Doc. 20, p. 2, First beginning paragraph.

Mr. Boyles did not agree to the use of his electronic signature in connection with the "Equity Trust Application" or arbitration. Doc. 20, p. 2, Second beginning paragraph. Doc. 20, p. 2, Second beginning paragraph.

EQUITY TRUST "ACCOUNT TRANSFER" FORM
Doc. 18-6

2.  Mr. Boyles physically signed the "Equity Institutional Account Transfer, which was drafted by Equity Trust Company, to create the account.

3.  The Equity "Account Transfer" did not contain an agreement to arbitrate. Doc. 20, p. 3, paragraph 2.

4.  Mr. Boyles never authorized use of his electronic signature on any document that had an agreement to arbitrate in or associated with it. Doc. 20, p. 3, paragraph 4.

5.  Mr. Boyles never authorized use of his electronic computer signature on or to be associated in any way with the Equity Trust "Account Transfer". Doc. 20, p. 3, paragraph 5.

DOCUSIGN "CERTIFICATE OF COMPLETION"
Attached to Doc. 20, as Exhibit 3

6. The DocuSign "CERTIFICATE OF COMPLETION" was not drafted by Mr. Boyles, and Mr. Boyles did not receive a copy of it at anytime. Ron Albon of Langmore stated to Mr. Boyles' that his computer signature would only be used one time- to open Mr. Boyles' IRA. No agreement to arbitrate was provided or disclosed to Boyles in connection or associated with said "Certificate of Completion". Doc. 20, p 3, paragraph 6 [copy attached as Exhibit 7 thereto].

7. The "Certificate of Completion" dated 10/28/2019, was in writing and did not contain any mention of, or consent to, an agreement to arbitrate. No arbitration agreement was disclosed to Mr. Boyles in connection with said "Certificate of Completion". Doc. 20, p 3, paragraph 7.

8. Defendants represented to Mr. Boyles that his electronic signature pursuant to the "Certificate of Completion" was only to be used for the creation of an account for gold/silver bullion purchases as approved by Mr. Boyles. The written DocuSign "Certificate of Completion" was not attached to any other document or record, or agreement to arbitrate. Doc. 20, p. 4, paragraph 8.

9. The "Certificate of Completion", was not provided to Mr. Boyles. Doc. 20, p. 4, paragraph 9.

10. The "Certificate of Completion" does not or refer to "the LANGMORE Shipping and Transaction Agreement" Doc 9-9. Mr. Boyles never saw the LANGMORE Shipping and Transaction Agreement" Doc 9-9; Doc. 20, p. 4, paragraph 10.

"EQUITY TRUST APPLICATION – TRADITIONAL, ROTH, OR SEP"
(Doc. 18-2; "Defendants' Production" # 82-85 [copy attached])

11. The "Equity Institutional Application – Traditional, Roth, or SEP" was drafted by Equity Trust. Defendants affixed a computer generated signature ("Defendants' Production" # 85). Boyles never saw said document, and was never informed of the existence of the document entitled "Equity Institutional Application – Traditional, Roth, or SEP". Mr. Boyles was not provided a copy of said document, and Mr. Boyles had no knowledge of the said document or of any agreement to arbitrate. Doc. 20, p. 4, paragraph 11.

12. See email from Langmore Capital Processing Department to Equity Trust ("Defendants' Production" #91-92, copy attached to Doc. 20 as Exhibit 6) in which Langmore Capital stated to Equity Trust: "Below, please find the exact email we received from Nikki [Nikki Whitley, Relationship Manager of Equity Trust].The forms we used for Carlton Boyles came from the attachments included in this

email." which "can be 'loaded into your DocuSign' and used in that manner." Doc. 20, p. 5, paragraph 12.

    13.    In said email ("Defendants' Production" #91-92) Langmore further stated: "Our only concern is with the client (Carlton Boyles) who already signed his application. Due to the fact that we administered the application through DocuSign, and we used the forms she [Nikki McKinley] attached – we would heavily prefer not to have to go through the application signing process with the client again."

Therefore, Mr. Boyles' signature was electronically affixed to said document by Defendants, and Defendants did not want to have Mr. Boyles' sign his physical signature to documents disclosing an arbitration agreement. Doc. 20, p. 5, paragraph 13.

    14.    The "application" (Doc. 20, Exibit 4]) is not physically signed by Mr. Boyles and was never provided to Boyles (Equity Trust "File Notes"- Doc 18, attachment 8), which disclose that the "application" was not provided to Boyles, and Boyles was not informed of the existence of an "application", or of the existence of the "Certificate of Completion. Mr. Boyles never had any knowledge of said "application", and Langmore Capital admits in its said email that it was "administered" through the DocuSign "fillable PDF forms" sent by Equity Trust to Langmore, and Defendants "administered the application through DocuSign." Doc 20, p. 5, paragraph 14.

    15.    The "application" specifically requires the physical signature of Mr. Boyles (Doc. 20, Exibit 4), and states: "IMPORTANT (Please Read Before <u>Signing</u>), and: "<u>Signatures – by signing below</u>, I hereby make the following representations:…" the only reference to arbitration relating to this action. Mr. Boyles never saw said "application", and never had any knowledge of its existence or association with the "Certificate of Completion. Doc. 20, p. 5, paragraph 15.

    16.    Mr. Boyles never agreed to the use of his "electronic signature" on the "Equity Institutional Application – Traditional, Roth, or SEP". Doc. 20, p. 6, paragraph 16.

    17.    The "Certificate of Completion" does not refer to the "Equity Institutional Application – Traditional, Roth, or SEP, or agreement to arbitrate. Doc 20, p. 6, paragraph 17.

"LANGMORE SHIPPING AND TRANSACTION AGREEMENT"
[Doc. 9-9 at 1, attached to Doc. 20 as Exhibit 5]

    18.    Langmore Capital drafted the "SHIPPING AND TRANSACTION AGREEMENT", which was never disclosed to, nor provided to Mr. Boyles, and he

5

Case 1:20-cv-00545-CCE-LPA   Document 25   Filed 02/05/21   Page 5 of 16

never authorized use of his electronic signature on said document, and Mr. Boyles had no knowledge of the document until Langmore until December 15, 2019. Doc. 20, p.6, paragraph 18.

19. Said "SHIPPING AND TRANSACTION AGREEMENT" bears only the copy of the purported electronic signature of Mr. Boyles, which was affixed by Defendants without Boyles' knowledge. Doc. 20, p. 6, paragraph 19

20. The DocuSign "Certificate of Completion" was drafted by Defendants (see Equity Trust Email - "Defendants' Production" # 91-93, attached to Doc. 20, as Exhibit 6). Doc. 20, p. 6, paragraph 20.

21. The "Certificate of Completion" specifies its "subject", which is not the "Shipping and Transaction Agreement", or the Equity Trust "Equity Trust Application – Traditional, Roth, OR SEP". Mr. Boyles did not consent to use of his electronic signature with either document. Doc. 20, p. 7, paragraph 21.

22. Mr. Boyles did not authorize, or have any knowledge of his electronic signature on any agreement for arbitration. Doc. 20 p. 7, paragraph 22.

23. No Equity Trust Application was provided to Mr. Boyles, and he had no knowledge of the Equity Trust Application or its contents, or of any arbitration agreement, when Mr. Boyles agreed to the use of his electronic signature to open an investment account with Defendants and there was no disclosure of any arbitration agreement. Mr. Boyles' did not draft, execute or adopt said "Certificate of Completion", and never saw or had knowledge of the existence of said document, or that it be adopted by or associated with the "SHIPPING AND TRANSACTION AGREEMENT", or with the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP" (Doc. 18-5; Defendants' Production" #72-73), or with any agreement for arbitration. Mr. Boyles had never seen the "SHIPPING AND TRANSACTION AGREEMENT", or the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP". Doc. 20, pp. 7-8, paragraph 23.

24. Mr. Boyles never authorized or consented to arbitration. Doc. 20, p.8, paragraph 24,

25. The "SHIPPING AND TRANSACTION AGREEMENT" (Doc. 18-12), which Langmore contends provided an arbitration agreement, consists of ten pages, not 44 pages as stated in the DocuSign "Certificate of Completion". Doc. 20, p. 8, paragraph 25,

26. The said document (Doc. 18-12), proffered by Langmore Capital has one computer electronic signature, not 3 signatures as stated in the DocuSign

"Certificate of Completion". Doc. 20, p. 8, paragraph 26,

27. The said "Certificate of Completion" is hearsay and not admissible in this proceeding, and does not refer to the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP". Doc. 20, p. 8, paragraph 27.

28. The "Certificate of Completion" contained no agreement to arbitrate. Mr. Boyles did not consent that it was associated with the Langmore "Shipping and Transaction Agreement", and Langmore Capital never at any time provided said "Shipping and Transaction Agreement" or any agreement to arbitrate to Mr. Boyles. Doc. 20, p. 8, paragraph 28.

29. Mr. Boyles never authorized the use of his electronic signature on the LANGMORE "SHIPPING AND TRANSACTION AGREEMENT" (Doc 9-9; 18-12), or on the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP" (Doc. 18-3;). Doc. 20, p. 8, paragraph 29.

30. Equity Trust in its "File Notes" ("Defendants' Production" # 94 attached to Doc. 20 as Exhibit 8) acknowledges that Boyles' account was created "with dealers docusign Document". There is no reference in Equity Trust "File Notes" to the LANGMORE "SHIPPING AND TRANSACTION AGREEMENT" (Doc 9-9; 18-12), or the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP", or to any arbitration agreement. Doc. 20, p. 9, paragraph 30.

31. Defendants' "File Notes", states Boyles' "Account Open and makes no reference to any arbitration agreement. Doc. 20, p. 9, paragraph 31.

32. Equity Trust admits that their "File Notes" summarize the transactions pertinent to Boyles' account, and do not list any agreement for arbitration. Doc. 20, p. 9, paragraph 32.

33. Neither the "Account Transfer" (Doc 18-5;) nor the Defendants' "File Notes", make mention of any arbitration agreement, and make no mention of the LANGMORE "SHIPPING AND TRANSACTION AGREEMENT" (Doc 9-9). or of the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP". Doc. 20, p. 9, paragraph 33.

34. Equity Trust acknowledged having received funds for Boyles' account in the email to Mr. Boyles, and do not mention any agreement to arbitrate. Doc. 20, p. 9, paragraph 34.

35. Equity Trust's email to Boyles ("Defendants' Production" # 58) regarding purchase of assets fails to mention any agreement to arbitrate. Doc. 20, p. 9, paragraph 35.

36. Equity Trust's letter to Boyles setting out the Account Number and Account Type, fails to mention any agreement to arbitrate. Doc. 20, p. 10, paragraph 36.

37. Defendants confirmed that they had created the LANGMORE "SHIPPING AND TRANSACTION AGREEMENT" (Doc 9-9), and the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP", and the "CERTIFICATE OF COMPLETION", using DocuSign, and that they did not want to have Mr. Boyles sign any additional documents because they used DocuSign for creation of said documents. See the following:

   a. Langmore's email to Equity Trust on October 28, 2019 states that "The forms we used for Carlton Boyles came from the attachments included in this email [from Equity Trust]", and "that the forms can be 'loaded into your DocuSign and used in that manner." Said email further states that "Our only concern is with the client (Carlton Boyles) who already signed his application. Due to the fact that we administered the application through DocuSign, which Nikki's email clearly states is acceptable, and we used the forms she attached – we would heavily prefer not to have to go through the application signing process with the client again."
   b. Nikki McKinley, Manager for Equity Trust, in an email to Langmore Capital, lists Mr. Boyles' "Application" as one of the documents created by using DocuSign, and used to create Mr. Boyles' account.
   c. The only document which Mr. Boyles "signed" was the "Account Transfer", which contains no reference to arbitration.
   d. Equity Trust and Langmore Capital did not send any of said documents to Mr. Boyles.

Doc. 20, p. 10, paragraph 37.

38. Equity Trust/Nikki McKinley sent the email dated October 24, 2019, to Langmore, in which she described said documents as being the *"Transfer Form:" and the *"Application". Doc. 20, p. 11, paragraph 38.

39. The only document in this action referred to as the "Transfer Form" in is the "Account Transfer", which was the only document physically signed by Mr. Boyles, and which contained no reference to an agreement to arbitrate. Doc. 20, p. 11, paragraph 39.

40. As stated in said email, Equity Trust admits that "Boyles had already signed his application." Doc. 20, p. 11, paragraph 40.

41. Defendants admitted that they created and affixed Boyles' electronic signature to the "Application", which Application is hearsay and not admissible in this proceeding. Defendants did not produce any document showing that they had provided or disclosed this "Application" to Mr. Boyles. Defendants admitted that they did not want to have Mr. Boyles sign any additional application. Doc. 20, p. 11, paragraph 41.

42. Boyles never signed, saw or authorized the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP" (Doc. 18-3), which specifically provides as follows

> "IMPORTANT (Please Read Before Signing", and in paragraph 2 below that states:
>
> "Signatures – By signing below, I hereby make the following representations:" one of which is the only reference to arbitration in any document asserted by Defendants.

Defendants thereby admitted that said document requires the physical signature of Boyles. [See *Powell v Newton*, 364 N.C. 562, 568,` 703 S.E.2d 723 (N.C. 2910) where the Supreme Court held that "Because of parties intended for Plaintiff's physical signature to appear in the …Agreement.., and because no signature is affixed, the writing is not signed."]. Doc. 20, p. 11, paragraph 42. This applies as well to the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP", which Boyles did not sign.

## QUESTIONS PRESENTED

1. Did Mr. Boyles electronically sign the Equity application incorporating the arbitration agreement in the IRA Custodial Account Agreement?

2. Did Mr. Boyles electronically sign the shipping and Transaction Agreement with Langmore?

## FINAL ARGUMENT

### CONTRACT DOES NOT PROVIDE FOR ARBITRATION

The only written contract signed physically by Mr. Boyles is the Equity Institutional Account Transfer, which does not provide for arbitration. Doc. 18-6.

The absence of an agreement for arbitration in said written document negates Defendants' contention that Mr. Boyles entered into a contract providing for arbitration.

## DEFENDANTS FAIL TO PROVIDE EVIDENCE THAT MR. BOYLES HAD KNOWLEDGE OF AN ARBITRATION AGREEMENT

The Defendants fail to carry their burden of proof that Mr. Boyles freely and knowingly entered into a contract for arbitration.

A motion to compel arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1-16, which provides in relevant part that:

> "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

"To decide whether "sufficient facts" support a party's denial of an agreement to arbitrate, the district court is obliged to employ a standard such as the summary judgment test. *See Chorley Enters., Inc.* , 807 F.3d at 564 ; *see also* Fed. R. Civ. P. 56(a). "*Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019)

"Because the issue of whether an arbitration agreement has been formed is an issue of contract law, we apply the "ordinary state-law principles that govern the formation of contracts" in reviewing a challenge under § 4. *See Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.* , 913 F.3d 409, 415 (4th Cir. 2019) (internal quotation marks omitted). *Berkeley Cnty. Sch. Dist. Supra*, 236.

The Court observed in Berkely, supra, that "in order to determine whether Berkeley Schools agreed to arbitrate", factual issues must be determined "including disputes regarding Berkeley Schools' knowledge of the unsigned [arbitration] Agreements,..." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 238 (4th Cir. 2019)

"[I]f the contract in which the arbitration clause "appears" was never formed, then the arbitration clause therein does not exist. *See Granite Rock Co.* , 561 U.S. at 299, 130 S.Ct. 2847 (explaining severability principle and that such principle does not apply where party challenges formation of contract containing arbitration clause)." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 238 n.14 (4th Cir. 2019)

Equity Trust sent Boyles a letter dated October 29, 2019 ("Defendants' Production" # 77) stating that Boyles "new account" was created, and setting out the Account Number and Account Type. Said Equity Trust letter does not mention any agreement to arbitrate, and fails to mention or enclose the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP" ("Defendants' Production" # 82-85). Doc. 21, p. 10, Paragraph 36.

Langmore Capital and Equity Trust both confirmed that they had created the LANGMORE "SHIPPING AND TRANSACTION AGREEMENT" (Doc 9-9), and the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP" ("Defendants' Production" # 82-85), and the DOCUSIGN "CERTIFICATE OF COMPLETION" [EXHIBIT 1 of Plaintiff's document production. (Plaintiff Answer to Interrogatories No. 13); Defendants' Production" # 86]), using DocuSign, and that they did not want to have Mr. Boyles sign any additional documents, because they used DocuSign for creation of said documents. In support thereof see the following:

   a. Langmore Capital sent an email to Equity Trust on October 28, 2019 ("Defendants' Production" # 91) which states that "The forms we used for Carlton Boyles came from the attachments included in this email [Defendants' Production" # 92-93 from Nikki McKinley, Relations Manager for Equity Trust].", and "that the forms can be 'loaded into your DocuSign and used in that manner." Said email further states that "Our only concern is with the client (Carlton Boyles) who already signed his application. Due to the fact that we administered the application through DocuSign, which Nikki's email clearly states is acceptable, and we used the forms she attached – we would heavily prefer not to have to go through the application signing process with the client again."
   b. Nikki McKinley, Relations Manager for Equity Trust, in an email to Langmore Capital [Defendants' Production" # 92], lists Mr. Boyles' "Application" as one of the documents created by using DocuSign, and used to create Mr. Boyles' account.
   c. The only document which Mr. Boyles "signed" was the "Account Transfer" ("Defendants' Production" # 72-76), which contains no reference to arbitration.
   d. Equity Trust and Langmore Capital did not send any of said documents to Mr. Boyles.

Doc. 21, p. 10, Paragraph 37.

Equity Trust/Nikki McKinley sent the email dated October 24, 2019, to Langmore Capital ("Defendants' Production" # 92), in which she stated that she was forwarding documents to Langmore Capital, and she described said documents as being the *"Transfer Form:" and the *"Application". Doc. 21, p. 10, Paragraph 38.

The only document in this action which could be referred to as the "Transfer Form" in said Equity Trust email, ("Defendants' Production" # 92),is the "Account Transfer" ("Defendants' Production" # #72-73, 65-66 [same document as # 72], and 55-56). This document was the only document physically signed by Mr. Boyles, and contained no reference to an agreement to arbitrate. Neither Equity Trust nor Langmore Capital provided any other documents to Mr. Boyles for his signature. Doc. 21, p. 11, Paragraph 39.

As stated in said email, Equity Trust's Application ("Defendants' Production" # # 82-86) dated 10/28/2019) was not signed by Mr. Boyles and only exhibited a purported electronic signature through Docusign. Equity Trust admits that *"Boyles had already signed his application."* ("Defendants' Production" # 92). Doc. 21, p. 11, Paragraph 40.

41.  The only document in this action which could be referred to in the Equity Trust email as the *"Application" is the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP" ("Defendants' Production" # 82-85), which Defendants admitted that they created and affixed Boyles' electronic signature thereto. Mr. Boyles had no knowledge of this document and did not authorize or consent to use of his electronic signature on in association therewith. Defendants did not produce any document showing that they had provided or disclosed this *"Application" to Mr. Boyles. Defendants admitted that they did not want to have Mr. Boyles sign any additional application. Doc. 21, p. 11, Paragraph 41

Boyles never signed, saw or authorized the "EQUITY INSTITUTIONAL APPLICATION – TRADITIONAL, ROTH, OR SEP" (Doc. 18-3; "Defendants' Production" # 84):, which specifically provides as follows

"IMPORTANT (Please Read Before Signing", and in paragraph 2 below that states:

"Signatures – By signing below, I hereby make the following representations:" one of which is the only reference to arbitration in any document asserted by Defendants.

Defendants thereby specifically stated and intended that said document requires the physical signature of Boyles. [See Powell v Newton, 364 N.C. 562, 568,`

703 S.E.2d 723 (N.C. 2910) where the North Carolina Supreme Court held that "Because of parties intended for Plaintiff's physical signature to appear in the …Agreement.., and because no signature is affixed, the writing is not signed."] Doc. 21, p. 11, Paragraph 42.

*North Carolina General Statute § 66-327*, Consumer transactions; alternative procedures for use or acceptance of electronic records or electronic signatures, provides in pertinent part:

> (f) Consumer Transaction Entered Into in North Carolina. - If a consumer located in North Carolina enters into a consumer transaction which is created or documented by an electronic record, the transaction shall be deemed to have been entered into in North Carolina for purpose of G.S. 22B-3 which shall apply to the transaction. (2000-152, s. 1; 2001-295, s. 5.)

*GS § 22B-3*. Contracts with forum selection provisions provides:

> Except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable. This prohibition shall not apply to non-consumer loan transactions or to any action or arbitration of a dispute that is commenced in another state pursuant to a forum selection provision with the consent of all parties to the contract at the time that the dispute arises. (1993, c. 436, s. 2; 1995, c. 100, s. 1.)

Therefore, the contended arbitration provision involved in this action is void and unenforceable.

## RECORDED TELEPHONE CALL

Defendants produced a recording which they contend represents Mr. Boyles' confirmation of the investment of his retirement of $437,328.77, on November 6, 2019. The absence of any mention of arbitration in the recorded telephone call between Langmore and Plaintiff on November 6, 2019, negates Defendants' contention that Mr. Boyles entered into an arbitration agreement.
Doc 18, Attachment 10, Declaration of Seville Slater, Exhibit2; and Doc. 19.

Mr. Boyles denies agreeing to investment of his retirement account of $437,328.77, on November 6, 2019, or at anytime, and his denial is corroborated by the Equity "Boyles Account Activities". Doc18, Attachment 8, Defendants' production of document # 0094, which fails to state that Boyles' account included any agreement to arbitrate. However, the Equity "Boyles Account Activities" states

that on November 7, 2019 Boyles declined the transaction and requested copy of the November 7, 2019 invoice. A November 7, 2019 invoice was provided to Mr. Boyles, and he received said invoice on November 8, 2019, and canceled the transaction on that date (see Facts above). The Equity "Boyles Account Activities" confirms that on November 11, 2019 Defendants received a certified letter from Boyles refusing, rejecting, and canceling the transaction.

The November 6, 2019 recorded telephone call is subject to question not only because Boyles' denies agreement to the November 6, 2019 invoice, and another invoice was in fact sent by Defendants dated November 7, 2019, but also because it lasts 4 minutes. Mr. boyles produced his telephone records which show two calls on November 6, 2019, one for 53 minutes the other lasting 19 minutes; There were no 4 minute calls. The Defendants' recording did not include "hello, good bye, or thank you" for an asserted investment of $437,328.77.

Said recorded telephone call is produced by Defendants' (Doc 18, Attachment 10, The Declaration of Seville Slater, Exhibit2; and Doc. 19). The Declaration of Seville Slater on its face fails to comply with Federal Rule of Civil Procedure, Rule 56 (c) (2), and "(4) providing: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

The Declarations of Seville Slater, Doc 18, Attachment 10, Hope Gonzales, Doc 18, Attachment 1, and Paul Rigali, Doc 18, Attachment 17, likewise are objectionable and not admissible to support Defendants' contentions, in that they are not "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." as required by FRCP 56.

NCGS § 66-327, Consumer transactions; provides in pertinent part:

(e) Oral Communications. - An oral communication or a recording of an oral communication shall not qualify as an electronic record for purposes of this section, except as other provided under applicable law.

"[T]he provisions of the Electronic Transactions Act apply only to [703 S.E.2d 728] "transactions between parties each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." *NCGS § 66–315(b). Powell v. City of Newton, 364 N.C. 562, 703 S.E.2d 723, 727 (N.C. 2010)*.

Plaintiff denies authorizing Defendants to use his electronic signature upon an agreement for arbitration. Defendants failed to present any admissible evidence that Plaintiff agreed that Defendants use Plaintiff's electronic signature upon an arbitration agreement. There was no "written provision" for arbitration which was known and agreed to by Plaintiff. 9 U.S.C. §2.

This the 5th day of January, 2021.

ss/ Stephen E. Lawing
_____
Stephen E. Lawing, Attorney for Plaintiff
1004 North Main Street, Suite 105
High Point, North Carolina 27362
Telephone No. (336) 885-2331
Email: lawingjustice1@yahoo.com
North Carolina State Bar No. 2652

CERTIFICATION

This brief is compliant with Local Rule 7.3(d).

## CERTIFICATE OF SERVICE

I, hereby certify that I have on this day electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to all counsel and parties of record as follows:

Mark W. Ishman, Esq.
Gordon & Rees LLP
421 Fayetteville Street, Suite 330
Raleigh, North Carolina 27601
Via Facsimile: 919-741-5840

This the 5th day of February, 2021.

ss/ Stephen E. Lawing
_____
Stephen E. Lawing, Attorney for Plaintiff